# UNITED STATES BANKRUPTCY COURT FOR
# THE WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In re:<br><br>NAJEEB AHMED KHAN,<br><br>                            Debtor. | Chapter 11<br>Case No. 19-04258 (SWD) |
| In re:<br><br>KHAN AVIATION, INC., et al.,<br><br>                            Debtors. | Chapter 11<br>Case No. 19-04261 (SWD)<br>(Jointly Administered) |
| In re:<br><br>INTERLOGIC OUTSOURCING, INC., et al.,[1]<br><br>                            Debtors. | Chapter 11<br>Case No. 20-00325 (SWD)<br>(Jointly Administered) |
| MARK T. IAMMARTINO, not individually, but solely in his capacity AS LIQUIDATING TRUSTEE FOR THE CONSOLIDATED ESTATE TRUST FOR THE BANKRUPTCY ESTATES OF NAJEEB A. KHAN, THE KHAN ENTITY DEBTORS, AND THE IOI DEBTORS,<br><br>                            Plaintiff,<br><br>v.<br><br>LAKE CITY BANK, LAKELAND FINANCIAL CORPORATION, NAJEEB A. KHAN, DAVID FINDLAY, LISA O'NEILL, ERIC OTTINGER, KRISTIN PRUITT, and BRADLEY TOOTHAKER,<br><br>                            Defendants. | Adv. Proc. No. 21-80071 (SWD)<br><br>**SUPPLEMENTAL OBJECTION TO DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>(Oral Argument Requested) |

---

[1] Najeeb Khan's Estate Tax I.D. No. is XX-XXX4873. The Debtors in the Khan Entities Cases, along with the last four digits of each Debtor's federal tax identification number, are: Khan Aviation, Inc. (0145), GN Investments, LLC (3550), KRW Investments, Inc. (4356), NJ Realty, LLC (3761), NAK Holdings, LLC (4717), and Sarah Air, LLC (4718). The Debtors in the Interlogic Cases, along with the last four digits of each Debtor's federal tax identification number are: Interlogic Outsourcing, Inc. (1273); IOI Payroll Services, Inc. (1202); TimePlus Systems, LLC (9477); IOI West, Inc. (1405); Lakeview Technology, Inc. (1451); Lakeview Holdings, Inc. (7589); and ModEarn, Inc. (3473).

4887-7836-0199

Plaintiff Mark T. Iammartino, not individually, but solely as the Liquidating Trustee for the Consolidated Estate Trust for the bankruptcy estates of Najeeb A. Khan, the Khan Entity Debtors, and the IOI Debtors (the "Trustee" or "Plaintiff"), respectfully submits this Supplemental Objection to the *Lake City Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint* [Dkt. No. 93] (the "Motion") filed by Lake City Bank, Lakeland Financial Corporation (together "Lake City"), David Findlay, Lisa O'Neill, Eric Ottinger, and Kristin Pruitt, (collectively, with Lake City, the "Defendants"), in response to the Court's October 3, 2023 Order requesting additional briefing "to address the role, if any, that § 553 plays in this controversy." [Dkt. No. 97] Section 553 is not applicable to the Diverted Funds Repayments or any preference actions related to the Diverted Funds Repayments because the *transfers* the Trustee seeks to avoid are not set offs.[2]

A. Dominion and Control of Lake City Bank Accounts

"[T]his court applies the dominion-and-control test to determine transferee liability—for both initial transferees and subsequent transferees." *Meoli v. The Huntington National Bank*, 848 F.3d 716, 725 (6th Cir. 2017). "[T]he minimum requirement of status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own purposes." *Id.* (quoting *Taunt v. Hurtado (In re Hurtado)*, 342 F.3d 528, 533 (6th Cir. 2003) (quoting *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 893 (7th Cir. 1988)).

The transfers at issue in this case are the Diverted Funds Repayments by IOI Payroll and TimePlus from their accounts at Berkshire to deposit accounts at Lake City. As explained in detail on pages 14-15 of the Trustee's opposition [Dkt. No. 95] (the "Opposition") to the Motion, the

---

[2] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Third Amended Complaint [Dkt. No. 86] (the "Third Amended Complaint" or "TAC").

-2-

facts alleged in the Third Amended Complaint establish Lake City's dominion and control over the flow of funds involved in the check kiting scheme, including the Diverted Funds Repayments received by Lake City from Berkshire Bank. Lake City made the decision to advance its own funds against provisional credits in IOI's accounts despite the lack of sufficient collected funds in those accounts to support such credits. (TAC ¶¶ 5, 10.) Lake City was not legally obligated to make such advances. (TAC ¶ 326). It did so for the purpose of generating millions of dollars in fees. (TAC ¶¶ 29, 40 & 224). Upon receipt of collected funds from Berkshire, Lake City applied those funds to satisfy the indebtedness IOI owed to it arising from such advances.[3] (TAC ¶¶ 5, 10.) Lake City's action in applying the Diverted Funds Repayments to the indebtedness owed to it establishes that Lake City had, and in fact exercised, dominion and control over the Diverted Funds Repayments following its receipt of collected funds from Berkshire.[4]

Because Lake City exercised full dominion and control over the funds in the accounts, Lake City was the transferee of those transfers, and each transfer of a Diverted Funds Repayment was complete the moment those funds were received by Lake City and became subject to its dominion and control.

---

[3] The Sixth Circuit recognizes that a depository bank's advances against provisional credit, outside the ordinary course of the routine check collection process, is an extension of credit creating a debt owed to the bank. *See In re Montgomery*, 983 F.2d 1389 (6th Cir. 1993) (debtors "operated a massive check kiting scheme through which they obtained what amounted to unauthorized loans from a number of different banks"); *First Tenn. Bank, N.A. v. Stevenson (In re Cannon)*, 237 F.3d 716, 720 (6th Cir. 2001) (advances against provisional credits create debt where the bank acts with knowledge of the kiting scheme or knowledge of questionable business practices by its account holder); *Emerson v. Federal Savings Bank (In re Brown)*, 209 B.R. 874, 883 (Bankr. W.D. Tenn. 1997) (whether a depositor's draw on provisional credit in a check kite should be treated as debt owed to the bank is a question of fact, including whether the bank had set up the accounts in a manner that would enable the debtor to take advantage of "days of float", and whether the bank charged fees per month for the use of uncollected balances).

[4] There is no question Lake City understood that in this particular case it had dominion and control over the flow of funds passing through IOI's accounts. In a July 22, 2016 email, Lake City's director of treasury management services, Doug Samuels, noted that IOI's "[use of] uncollected funds means funds are going outside the bank before we have collected funds at LCB to pay for them . . ." Samuels went on to advise his superiors that "I don't think we should allow this to happen" and LCB needed to "discuss this further" and "decide how to proceed." (TAC ¶¶ 6,15).

B.     Section 553 is not applicable

Section 553 is not applicable because the transfers the Trustee seeks to recover are not setoffs. A setoff occurs when a creditor and the debtor owe each other money, and the creditor seeks to reduce or eliminate what it owes to the debtor. Fundamentally, for a setoff to apply, the party asserting the setoff must show, among other things, that there are mutual obligations owed between the parties. *Ky. Cent. Ins. Co. v. Brown (In re Larbar Corp.)*, 177 F.3d 439, 445–47 (6th Cir. 1999) (discussing application of set off).

Section 553 of the Bankruptcy Code provides certain protections for a creditor's unexercised, prepetition setoff rights. *See In re Kunkel*, 582 B.R. 184, 186 n. 1 (Bankr. W.D. Mich. 2018) (discussing protection afforded by section 553). Section 553(a) of the Bankruptcy Code provides that:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right <u>of a creditor</u> to offset a <u>mutual</u> debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . .

11 U.S.C. § 553(a) (emphasis supplied).

As articulated by the Supreme Court in its seminal decision in *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 19 (1995), where a mutual debt exists "a setoff has not occurred until three steps have been taken: (i) a decision to effectuate a setoff, (ii) some action accomplishing the setoff, and (iii) a recording of the setoff." These steps implicitly require that the creditor—not the debtor—take actions intended to reduce permanently the debtor's account balance. *Id.* (citations omitted). Here, to the extent any setoff occurred, it certainly did not occur until after Lake City received the Diverted Funds Repayments, at which point the transfer was already complete because the collected funds received by Lake City from Berkshire were fully under Lake City's

-4-

dominion and control. Indeed, Lake City's application of the collected funds to satisfy the indebtedness arising from its advances to IOI demonstrates Lake City's dominion and control over such funds.

Further, there was no <u>mutual</u> debt extinguished by Lake City's application of the Diverted Funds Repayments to the negative collected balances. Given the continual existence of the negative collected balances in the Fraud Accounts, there was never any moment after Lake City received the Diverted Funds Repayments that Lake City had any obligation to IOI to make the Diverted Funds Repayments available to them.[5] Under the Account Agreement governing the IOI deposit accounts (as authorized by Regulation CC), Lake City retained the absolute right to refuse to honor any check or withdrawal request if there were insufficient collected funds in the account. (*See* TAC ¶ 326.)

Finally, even if the Trustee were seeking to avoid as a fraudulent transfer or preference the application of the Diverted Funds Repayments against negative collected balances (which the Court in its Order characterizes as a setoff under § 553), that application of funds would still constitute a "transfer" under Sixth Circuit precedent. For example, in *In re Montgomery*, the defendant bank credited deposits from other banks against arrearages in the debtor's accounts that had arisen from the debtor's check kiting scheme. *In re Montgomery*, 983 F.2d 1389, 1391 (6th Cir. 1993). The Sixth Circuit found nonetheless that the defendant bank had received preferential transfers, noting:

> It is true that Third National did not actually give Mr. Montgomery cash for the checks drawn on his accounts at other banks. What Third National gave him instead was immediate credits in the Main Funding Account, which credits were used – as Montgomery intended that they should be used – to discharge his indebtedness to

---

[5] Moreover, there clearly is a lack of mutuality for the approximately $16.9 million in Diverted Funds Repayments that were made by IOI Payroll and TimePlus from their Berkshire accounts to repay the negative collected balances in Interlogic's Lake City account. (*See* TAC ¶ 118 and Exhibit E referenced therein).

> Third National. In economic substance the result was the same as if Third National had handed Mr. Montgomery currency which he promptly handed back for application against his debt.

*Id*. at 1394.

Similarly, the Sixth Circuit in *Meoli* recognized that the direct and indirect loan repayments received by Huntington Bank were transfers subject to avoidance, despite the fact that those loan payments were effectuated by Huntington Bank crediting funds held in the debtor's deposit account against debts owed to the bank. *See Meoli v. The Huntington National Bank*, 848 F.3d 716 (6th Cir. 2017) (affirming holding that loan repayments constituted fraudulent transfers). See *also First Tenn. Bank, N.A. v. Stevenson (In re Cannon)*, 237 F.3d 716, 720 (6th Cir. 2001) (transfers made by debtor to cover charge back in escrow account were transfers for preference purposes).

The facts alleged in the Third Amended Complaint simply do not support a finding that the Diverted Funds Repayments the Trustee seeks to recover as fraudulent and preferential transfers constitute setoffs subject to the provisions of section 553 of the Bankruptcy Code. Regardless, and more to the point for present purposes in this proceeding, the question of whether the Diverted Funds Repayments could properly be determined to constitute setoffs under Indiana law[6] and the Bankruptcy Code—just like the question of dominion and control—is fundamentally a factual question that the Court cannot resolve on a Motion to Dismiss. *See, e.g.*, *In re Process Am., Inc.*, 588 B.R. 82, 103 (Bankr. C.D. Cal. 2018) (existence and extent of setoff rights was factual question that could not be resolved on a motion to dismiss).

---

[6] For example, the Court would have to first determine whether Lake City even had a valid right to set off funds in the Debtors' accounts given the Bank's fraudulent and inequitable conduct, its participation in Khan's fraud, and its knowledge of Khan's fraudulent scheme. *See*, *e.g.*, *First Bank of Whiting v. Samocki Bros. Trucking Co.*, 509 N.E.2d 187, 199 (Ct. App. Ind. 1987) (discussing various ways in which bank can be deemed to have waived its right to setoff).

## **CONCLUSION**

For the foregoing reasons, the Trustee respectfully requests this Court deny the Lake City Defendants' motion to dismiss the Third Amended Complaint.

Dated: October 17, 2023			Respectfully submitted,

*/s/ Louis T. DeLucia*
Louis T. DeLucia (admitted *pro hac vice*)
Alyson M. Fiedler (admitted *pro hac vice*)
ICE MILLER LLP
1500 Broadway, Suite 2900
New York, NY 10036
Telephone: (212) 835-6312
Email: louis.delucia@icemiller.com
Telephone: (212) 835-6315
Email: alyson.fiedler@icemiller.com

Dan Polatsek (admitted *pro hac vice*)
Michael W. Ott (admitted *pro hac vice*)
ICE MILLER LLP
200 West Madison, Suite 3500
Chicago, IL 60606-3417
Telephone: (312) 726-7103
Email: michael.ott@icemiller.com

*Counsel for Mark T. Iammartino, not individually, but solely in his capacity as Liquidating Trustee for the Consolidated Estate Trust for the Bankruptcy Estates of Najeeb A. Khan, the Khan Entity Debtors, and the IOI Debtors*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2023, I electronically filed and served the foregoing objection upon all parties in interest electronically through the CM/ECF system.

By: /s/ *Louis T. DeLucia*

4887-7836-0199